UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

| | |
|---|---|
| Umon Ywork Moore, | **Case No.:** |
| | **Jury Demanded** |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Scheels All Sports, Inc., | |
| a North Dakota Corporation | |
| d/b/a Scheels, | |
| Defendant. | |

_____

For his Complaint against defendant Scheels All Sports, Inc., plaintiff Umon Ywork Moore states and alleges as follows:

## NATURE OF ACTION

1. This is an action for money damages due to defendant's tortious conduct involving its June 4, 2020, purchase of a stolen handgun from one person only to later resell it to the plaintiff, the consequences of which resulted in plaintiff's false arrest, custodial detention and confiscation of the handgun by law enforcement officials.

## JURISDICTION AND VENUE

2. Provisions of the federal Gun Control Act of 1968, Public Law 90-618, Title 18 U.S.C. – Firearms Chapter 44, § 101 confer jurisdiction over this matter. Plaintiff further invokes the Court's pendant jurisdiction regarding claims arising under the laws of the state of Minnesota.

1

3. Venue is proper is proper pursuant to 28 U.S.C. § 1391(b)(2)(3).

4. Plaintiff's damages exceed $75,000.00, excluding interest, costs and attorney fees.

## PARTIES

5. Plaintiff Umon Ywork Moore is a twenty-five-year-old, African-American male resident of Rochester, Minnesota.

6. Defendant Scheels All Sports, Inc. is a North Dakota Corporation doing business as "Scheels." Scheels principal place of business address is Scheels Corporate Office, 1707 Gold Drive – Corporate Office, Fargo, North Dakota 58103–5810. Scheels' registered agent/office address is Steven M. Scheel, CEO, 505 Center Avenue, Moorhead, Minnesota 56560-1921.

## FACTS

7. Scheels conducts sporting goods-related business throughout the United States, having thirty-one stores throughout the country including a Rochester, Minnesota store.

8. Scheels sporting goods business includes, without limitation, the sale of various new and used firearms including handguns, rifles and shotguns.

9. Scheels sale of new and used firearms is governed by and must comply with various federal and/or state laws permitting it to "engage in the business" of selling firearms. *See* 18 U.S.C. § 921(a)(21).

10. Scheels advertises the sale of firearms to the public through various electronic and/or print media.

11. Scheels solicits the purchase of used firearms from the public for its later resale thereof.

12. Scheels purchases used firearms from people desiring to "trade into" a new firearm with the used firearm taken in trade later being resold by Scheels.

13. Scheels also purchases used firearms from people simply desiring to sell their firearms with the used firearm later being resold by Scheels.

14. The difference in price between what Scheels pays people to purchase their used firearm versus the price Scheels resells such firearm for is greater than that from what Scheels typically earns from the purchase and sale of a comparable new firearm purchased from a distributor, thereby resulting in greater financial profit to Scheels.

15. The greater financial profit resulting from Scheels used firearms purchase/resale policies versus that of new firearms has contributed to a thriving market for used firearms.

16. Following the May 25, 2020, death of forty-six-year-old African-American male George Floyd while in police custody, the ensuing nationwide riots and calls to defund police departments, the demand for/sale of firearms and ammunition soared, with such demand often outstripping supply. Such circumstances rendered the market for used firearms (with accompanying greater financial profit) even more lucrative.

17. Following the events of May 2020 and continuing, Scheels demand for/sale of firearms and ammunition soared, with such demand often outstripping supply. Such circumstances rendered Scheels used firearms purchase/resale policies even more profitable for Scheels.

18. On June 4, 2020, Scheels Rochester store purchased a used semiautomatic handgun from a person without first taking reasonable measures to ensure the handgun being purchased was legally owned by such person and, in turn, legal for Scheels to purchase and later resell.

19. On June 19, 2020, Scheels resold the previously purchased used handgun to Plaintiff.

20. On November 27, 2021, while target shooting with several friends during the Thanksgiving holiday, an Obion County, Tennessee law enforcement official arrived at the shooting range and in the course of checking firearm serial numbers learned that Plaintiff's handgun was stolen.

21. Thereafter, Plaintiff was arrested, detained in custody, and the used handgun that Scheels had sold him was confiscated for being a stolen.

22. During the course of his arrest, custodial detention and accompanying confiscation of the stolen handgun, Plaintiff was caused to suffer embarrassment, humiliation, emotional distress, mental anguish, injury to his reputation and the financial loss of property prior to eventually being released.

## COUNT ONE

## NEGLIGENCE

23. Plaintiff restates and realleges the allegations contained in paragraphs 1-22 of his Complaint as though fully set forth herein.

24. The law states, *"[i]t shall be unlawful for any person to receive, . . ., sell, . . . any stolen firearm . . . after it was stolen, knowing or having reasonable cause to believe that the firearm* or ammunition *was stolen."* 18 U.S.C. § 922(j). Unlawful to possess, store, sell or pawn stolen firearms. (Emphasis).

25. Scheels possesses a duty of care to ensure that the used firearms it purchases from people for later resale are not stolen, such duty extends to the public as potential purchasers thereof and extended to Plaintiff incident to Scheels June 19, 2020, sale of the stolen handgun to Plaintiff.

26. On June 4, 2020, Scheels Rochester store purchased a stolen semiautomatic handgun from a person without first taking reasonable measures to ensure the handgun being purchased was legally owned by such person and, in turn, legal for Scheels to purchase and later resell.

27. By its purchasing the stolen handgun from a person without first taking reasonable measures to ensure that such handgun was legally owned thereby and, in turn, legal for Scheels to purchase and later resell, Scheels breached its duty of care to the public and Plaintiff as potential purchasers thereof.

5

28. Scheels possesses a duty of care to ensure that the firearms it sells to the public are not stolen, such duty extends to the public and Plaintiff as potential purchasers thereof and extended to Plaintiff incident to Scheels June 19, 2020, sale of the stolen handgun to Plaintiff.

29. By its purchasing a stolen handgun from a person without first taking reasonable measures to ensure that such handgun was legally owned thereby and, in turn, legal for Scheels to purchase/resell, Scheels breached its duty of care to the Plaintiff incident to its June 19, 2020, sale of the stolen handgun to Plaintiff.

30. As a direct and proximate cause of Scheels negligent actions and/or omissions in failing to ensure that the used handgun it purchased and later resold to Plaintiff was not stolen, Plaintiff was falsely arrested, detained in custody and the stolen handgun that Scheels had sold him was confiscated for being a stolen.

31. As a direct and proximate cause of Scheels negligent actions and/or omissions in failing to ensure that the used handgun it purchased and later resold to Plaintiff was not stolen, Plaintiff's subsequent false arrest, custodial detention and the confiscation of the stolen handgun, Plaintiff has incurred the financial loss of personal property, suffered embarrassment, humiliation, emotional distress, mental anguish, injury to his reputation, and has been damaged in an amount exceeding seventy-five thousand ($75,000.00) dollars.

**JURY DEMAND**

Plaintiff respectfully demands trial by jury of all claims and issues so triable as allowed pursuant to applicable law.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Umon Ywork Moore, prays for judgment against defendant Scheels All Sports, Inc., as follows:

1. As to Count One, a money judgment in excess of seventy-five thousand dollars ($75,000.00);

2. Plaintiff's costs, disbursements, reasonable attorney fees and prejudgment interest; and

3. For such other and further relief as this Court may deem just and equitable.

Respectfully,

ROBERT GARDNER LAW

Dated: March 14, 2022

*/s/ Robert M. Gardner*
Robert M. Gardner, #0234977
3265 19th Street N.W., #625
Rochester, MN 55901
Phone: 651-927-9031
*robert@robertgardnerlaw.net*

Attorney for Plaintiff
Umon Ywork Moore